UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SPARK ENERGY GAS, LP,　　　)
　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　)　　　　CIVIL ACTION
　　　v.　　　　　　　　　　　)　　　　NO.  11-11452-JGD
　　　　　　　　　　　　　　　)
TOXIKON CORPORATION,　　　)
　　　　　　　　　　　　　　　)
　　　　　　　Defendant.　　　　)

## MEMORANDUM OF DECISION AND ORDER
## ON DEFENDANT'S MOTION TO STAY OR DISMISS

May 16, 2012

DEIN, U.S.M.J.

## I.  INTRODUCTION

The plaintiff, Spark Energy Gas, LP ("Spark" or "Plaintiff"), provides natural gas

services to retail customers.  On May 8, 2007, Spark entered into a fixed-price contract to

supply natural gas to the defendant Toxikon Corporation ("Toxikon" or "Defendant")

during the period June 1, 2007 through May 31, 2010, and on May 9, 2007 Spark entered

into a fixed-price contract to supply natural gas to Toxikon during the period June 1,

2010 through May 31, 2012.  Both contracts were negotiated and signed by Patriot

Energy Group, Inc. ("Patriot") on behalf of Toxikon pursuant to an Appointment of

Agent dated May 8, 2007, whereby Toxikon appointed Patriot its agent.

It is undisputed that Toxikon refused to accept the gas under the second contract

beginning on or about August 2010, contending that the price charged was excessive

based on market rates.  Spark brought suit against Toxikon in Texas State Court on February 8, 2011 to collect amounts it claims are due under the gas contract (the "collection case").  Toxikon removed the collection case to federal court in Texas, and then sought to have the case either dismissed or transferred to Massachusetts.  During jurisdictional discovery in Texas, Toxikon contends that it learned that Patriot had failed to disclose that it was the agent for Spark when it agreed to be Toxikon's agent.  Toxikon further asserts that it never would have entered into the gas supply contract with Spark which Patriot had negotiated on its behalf if it had known of Patriot's undisclosed loyalty to Spark.

Toxikon then brought suit in the Massachusetts Superior Court against Patriot and Spark, alleging, *inter alia*, that Patriot had breached its fiduciary duties owed to Toxikon as its agent, and seeking rescission of its Appointment of Agent agreement with Patriot and rescission of its gas supply agreement with Spark.  The Texas federal court thereafter allowed Toxikon's motion to transfer Spark's collection case to Massachusetts.  As a result, there is presently pending the instant collection case in this court between Spark and Toxikon, and the Massachusetts Superior Court action brought by Toxikon against Spark and Patriot (the "State Court Action").

This matter is presently before the court on "Defendant Toxikon's Motion to Stay Proceedings or Alternatively, to Dismiss" (Docket No. 37).  By its motion, Toxikon is seeking a stay of this action, or alternatively, a dismissal of this action in favor of the pending Massachusetts State Court Action, pursuant to the abstention-like doctrine

2

established by the Supreme Court in <u>Colorado River Water Conservation Dist. v. United</u>

<u>States</u>, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976) ("<u>Colorado River</u>").  Under

that doctrine, federal courts may decline jurisdiction in favor of parallel state litigation

"for reasons of wise judicial administration," but only in "exceptional" cases.  <u>Colorado</u>

<u>River</u>, 424 U.S. at 818, 96 S. Ct. at 1246.  For all the reasons detailed below, while there

is overlap between some of the issues presented in both cases, this court finds that this is

not an "exceptional" case.  Therefore, Toxikon's motion to stay or to dismiss is DENIED.

## II.  <u>STATEMENT OF FACTS</u>[1]

### <u>The Parties</u>

Defendant Toxikon is a product and materials testing laboratory that is

incorporated in Massachusetts and maintains a usual place of business in Bedford,

Massachusetts. (Compl. ¶¶ 1, 3).  Toxikon relies on natural gas to operate its facilities in

the Commonwealth.  (<u>Id.</u> ¶ 3).  Plaintiff Spark is a partnership, which is organized under

the laws of the State of Texas, and maintains a principal place of business in Houston,

Texas.  (Pet. ¶ 2).  Spark is in the business of selling natural gas and related services to

retail customers, including customers in Massachusetts.  (<u>Id.</u> ¶ 8; Compl. ¶ 4(b)).

---

[1]  The facts are derived from (1) the Plaintiff's Original Petition in this matter (Docket No. 1-3) ("Pet."), (2) Toxikon's Complaint and Jury Claim in the State Court Action ("Compl."), which is attached as Exhibit A to the Defendant's motion to stay or dismiss (Docket No. 37), and (3) the exhibit attached to the Plaintiff's Opposition to Defendant Toxikon's Motion to Stay Proceedings or Alternatively, to Dismiss (Docket No. 40) ("Pl. Ex. 1").

As described above, the present litigation arises out of a contract for the supply of natural gas, which a third-party, Patriot, entered into with Spark on Toxikon's behalf. Patriot, like Toxikon, is a Massachusetts corporation that maintains its usual place of business within the Commonwealth.  (Compl. ¶ 2(a)).  Patriot is engaged in the business of representing gas supply companies for the purpose of selling natural gas and related services to natural gas users in Massachusetts.  (Id. ¶ 4(a)).

### The Alleged Relationship Between Patriot and Spark

Toxikon claims that in about late 2006 or early 2007, Spark and Patriot entered into a contract pursuant to which Spark retained Patriot as its agent to locate and solicit potential customers for Spark in Massachusetts, and to assist Spark in consummating agreements with those customers for the purchase of natural gas from Spark.  (Compl. ¶¶ 5-8).  The contractual arrangement between Patriot and Spark was deemed to be confidential.  (Id. ¶¶ 5, 8).  Consequently, Patriot was prohibited from disclosing the existence of its relationship with Spark to others.  (Id. ¶¶ 8, 11).

Allegedly, the contract between Patriot and Spark has remained in effect at all times relevant to this case.  (See id. ¶ 9).  Toxikon claims that Patriot earns substantial commissions for completing deals between Spark and natural gas users in Massachusetts. (Id. ¶ 7).

## **Toxikon's Agreements with Patriot and Spark**

Toxikon alleges that during the time period from about February 2007 through May 2007, Patriot repeatedly solicited business from Toxikon without revealing its relationship with Spark.  (<u>Id.</u> ¶ 10).  Specifically, according to Toxikon, Patriot represented that if Toxikon hired Patriot as its agent, Patriot would evaluate the natural gas market, investigate companies in the business of supplying natural gas to end users, and present alternative proposals to Toxikon so that it could obtain natural gas under the most advantageous terms and at the most competitive prices.  (<u>Id.</u> ¶ 11).  In addition, Patriot allegedly assured Toxikon that it was an independent agent, and that it would perform its work with the utmost loyalty and good faith in order to obtain the best  possible deal for Toxikon with respect to the purchase of natural gas.  (<u>Id.</u>).  However, Patriot allegedly never disclosed the fact that it had a pre-existing contractual relationship with Spark and was working on Spark's behalf.  (<u>Id.</u> ¶¶ 10, 11).  Consequently, Toxikon claims that Patriot's conduct was knowingly false, misleading, unfair and deceptive.  (<u>Id.</u> ¶ 11).

On May 8, 2007, Toxikon entered into an Appointment of Agent agreement with Patriot whereby Toxikon appointed Patriot "as its agent to act in its name, place and stead . . . with respect to researching, negotiating, executing, terminating, rescinding and delivering, energy product and service agreements with competitive energy suppliers[,]" and granted Patriot "an exclusive right to, among other things, enter into an agreement(s) with competitive energy suppliers."  (Pl. Ex. 1).  As set forth therein, Toxikon also agreed, in relevant part, that

> any third party receiving a duly executed copy or facsimile of this
> Appointment of Agent may act hereunder, and that revocation or
> termination hereof shall be ineffective as to the Agent and such third
> party unless and until actual written notice of such revocation or
> termination shall have been received by the Agent and such third
> party.

(Id.).  Toxikon claims that if it had known about Patriot's relationship with Spark, it never would have appointed Patriot as its agent.  (Compl. ¶ 16).  For its part, Spark contends that Toxikon, by entering into the Appointment of Agent agreement, held Patriot out as having apparent authority to enter into energy product agreements on Toxikon's behalf. (Pl. Opp. Mem. (Docket No. 40) at 2-3).

On May 8, 2007, immediately following its appointment as Toxikon's agent, Patriot proceeded, purportedly on behalf of Toxikon, to enter into a Natural Gas Sales Agreement with Spark for the purchase of natural gas from Spark during the time period from June 1, 2007 through May 31, 2010.  (Pet. ¶ 8; Compl. ¶ 15).  One day later, on May 9, 2007, Patriot, again allegedly acting on Toxikon's behalf, entered into a second Natural Gas Sales Agreement with Spark for the purchase of natural gas during the time period from June 1, 2010 through May 31, 2012.  (Pet. ¶ 8).  Toxikon's decision not to proceed with this second Sales Agreement is at issue in this litigation.

Pursuant to the terms of the Sales Agreements, Spark agreed to provide fixed quantities of natural gas to Toxikon at a fixed price so that Toxikon could meet its monthly demand at a previously agreed upon price, and Toxikon agreed to accept the gas and to pay the amounts invoiced by Spark within the time period set forth in the Sales

Agreement.  (Id. ¶ 9).  Both parties fulfilled their stated obligations under the first Sales

Agreement. (Id. ¶ 10).  Spark claims that it began providing natural gas to Toxikon on

June 1, 2010 pursuant to the second Sales Agreement, and continued to provide natural

gas to Toxikon through August 2010, at which time Toxikon refused to accept any further

gas.  (Id.).  In addition, Toxikon refused to pay any invoices after May 2010.  (Id.).

The Sales Agreement provides in relevant part as follows:

> Upon the occurrence and during the continuance of an Event of
> Default, the non-defaulting Party may ... (ii) upon written notice
> at least one day in advance, accelerate any amounts owing between
> the Parties and terminate and liquidate any agreements between the
> Parties; (iii) determine a settlement amount for each agreement by
> calculating the gains, losses and costs (including reasonable attor-
> ney's fees and the costs of obtaining, maintaining and liquidating
> commercially reasonable hedges) incurred as a result of the liquida-
> tion, discounted to present value at 6% per annum ....

(Pet. Ex. A ¶ 9).  Pursuant to this provision, Spark has calculated a settlement amount of

$301,124, exclusive of attorney's fees and costs.  (Pet. ¶ 11).  Spark claims that Toxikon

has refused to pay any of this amount, despite Spark's demand that it do so.  (Id. ¶¶ 12,

13).

### Procedural History

Spark initiated this collection case against Toxikon on February 8, 2011 by filing

an Original Petition in Texas state court.  (Petition (Docket No. 1-3)).  By its Petition,

Spark claims that Toxikon breached its obligations under the second Sales Agreement by

failing to make timely payments due under the Agreement, and by refusing to accept and

pay for natural gas as required by the Agreement.  (Pet. ¶¶ 15-19).  Spark further claims

that as a result of its breach, Toxikon is obligated to pay the Plaintiff a settlement amount of $301,124.  (Id. ¶ 20).  Additionally, Spark is seeking reasonable attorneys' fees from Toxikon.  (Id. ¶ 23).

Toxikon denies any liability for breach of contract or for attorneys' fees.  (See Answer (Docket No. 5) ¶¶ 15-23).  Moreover, it denies that there was ever a valid contract between the parties.  (Id. ¶ 10).  In particular, Toxikon claims that the Sales Agreement was "never signed or agreed to by a person authorized to do so for and on behalf of [Toxikon]."  (Id. ¶ 8; see also id. ¶ 26).  Thus, although Patriot is not a party to this action, Toxikon is claiming that the Sales Agreement is unenforceable because Patriot lacked authority to enter into it on Toxikon's behalf.  Spark contends that it doesn't matter if Patriot had no actual authority to enter into the Sales Agreement because Patriot had apparent authority to act on Toxikon's behalf and the Agreement, therefore, remains enforceable.  (Pl. Opp. Mem. at 2-3).

Toxikon removed the Texas collection case to federal court in Texas.  Thereafter, on April 27, 2011, Toxikon filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue to this court.  (Docket No. 12).  On August 15, 2011, the United States District Court for the Southern District of Texas issued an order allowing Toxikon's motion to transfer venue and denying as moot its motion to dismiss. (Docket No. 28).  Accordingly, the matter was transferred to this court.

Toxikon claims that during the course of jurisdictional discovery taken in connection with its motion to dismiss or transfer, it discovered for the first time that Patriot had a

pre-existing contractual arrangement with Spark.  (Def. Mem. (Docket No. 37) at 3).

Accordingly, on July 11, 2011, while its motion to dismiss or transfer was pending,

Toxikon filed a Complaint against Patriot and Spark in Massachusetts Superior Court.

(Compl.).  Therein, Toxikon asserted claims against Patriot for breach of contract, breach

of fiduciary duty, and intentional misrepresentation, as well as claims against both Patriot

and Spark for rescission of contract and violations of Mass. Gen. Laws ch. 93A.  Signifi-

cantly, by its rescission of contract claims, Toxikon is seeking to establish that the

Appointment of Agent agreement with Patriot "is void and of no effect from its inception

because of defendant Patriot's failure to disclose its pre-existing agency relationship with

defendant Spark[,]" and that the Sales Agreement with Spark "is void and of no effect

from its inception because such contract [was] procured through fraud, intentional

misrepresentation, disloyalty and breach of fiduciary duty."  (Compl. ¶¶ 21, 22).  Thus, as

in this case, Toxikon is claiming in the State Court Action that Patriot lacked authority to

enter the Sales Agreement with Spark on its behalf, and that the Sales Agreement is

therefore invalid and unenforceable.

Additional factual details relevant to this court's analysis are described below

where appropriate.

## III.  ANALYSIS

Toxikon has moved for a stay of this action, or alternatively, dismissal of the

matter in favor of the State Court Action, pursuant to the Colorado River doctrine.  That

doctrine "permits federal courts to decline jurisdiction in favor of parallel state litigation

for reasons of 'wise judicial administration.'" <u>Villa Marina Yacht Sales, Inc. v. Hatteras Yachts</u>, 915 F.2d 7, 8 (1st Cir. 1990) (quoting <u>Colorado River</u>, 424 U.S. at 818, 96 S. Ct. at 1246).  However, "[t]here must be some extraordinary circumstances for a federal court to shrink from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." <u>KPS & Assocs., Inc. v. Designs by FMC, Inc.</u>, 318 F.3d 1, 10 (1st Cir. 2003) (quotations and citations omitted).  In the instant case, Toxikon has not established the presence of extraordinary circumstances that would support a stay or dismissal under the <u>Colorado River</u> doctrine.  Therefore, Toxikon's motion must be denied.

### A.   Abstention Under Colorado River

"It has long been established that the presence of parallel litigation in state court will not in and of itself merit abstention in federal court." <u>Jimenez v. Rodriguez-Pagan</u>, 597 F.3d 18, 27 (1st Cir. 2010).  Accordingly, the Supreme Court held in <u>Colorado River</u> "that the surrender of jurisdiction in favor of parallel state proceedings for reasons of 'wise judicial administration' is permissible only in 'exceptional' circumstances." <u>Villa Marina Yacht Sales, Inc.</u>, 915 F.2d at 12 (quoting <u>Colorado River</u>, 424 U.S. at 818, 96 S. Ct. at 1246).  The First Circuit has warned that the doctrine established by the Supreme Court in <u>Colorado River</u> is narrow and should be used sparingly.  "Of all the abstention doctrines, it is to be approached with the most caution, with '[o]nly the clearest of justifications' warranting dismissal." <u>Jimenez</u>, 597 F.3d at 27 (quoting <u>Colorado River</u>, 424 U.S. at 819, 96 S. Ct. 1236).

10

"[C]ourts look to a variety of factors to determine whether 'exceptional circum-stances' exist which counsel the abdication of jurisdiction in favor of parallel state court litigation."  KPS & Assocs., Inc., 318 F.3d at 10.  These factors include:

> (1) whether either court has assumed jurisdiction over a *res*; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for principles underlying removal jurisdiction.

Id.  "This list is by no means exhaustive, nor is any one factor necessarily determinative."  Id.  Furthermore, in evaluating these factors, the court must always keep in mind "the 'heavy presumption favoring exercise of jurisdiction[.]'"  Id. (quoting Villa Marina Yacht Sales, Inc., 915 F.2d at 13).  For the reasons detailed below, this court finds that the circumstances presented in this case are not sufficient to overcome this presumption.[2]

### B.    Application of the Relevant Factors

A number of the Colorado River factors have little bearing on this case.  There is no dispute that there is no *res* at issue in this action, the federal forum is equally convenient to the state forum, and there are no vexatious or contrived federal claims that have been asserted against the Defendant.  (See Def. Mem. at 7).  Accordingly, the first,

---

[2] There is some question as to whether this case and the State Court Action are sufficiently similar to trigger analysis under the Colorado River doctrine in the first place. Nevertheless, "perfect identity of issues is not a prerequisite for dismissal" under Colorado River. Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 947 F.2d 529, 533 (1st Cir. 1991).  Moreover, Spark does not argue that the doctrine is inapplicable.  Therefore, this court will assume, without deciding, that a Colorado River analysis is appropriate.

second and seventh factors are not relevant here.  Additionally, although the parties do

not dispute that the Massachusetts Superior Court is adequate to protect the parties'

interests, this factor is important "only when it disfavors abstention."  United States v.

Fairway Capital Corp., 483 F.3d 34, 43-44 (1st Cir. 2007).  Therefore, the sixth factor is

neutral and does not support a stay of federal jurisdiction.  After carefully considering the

remaining factors in light of the heavy presumption in favor of exercising jurisdiction,

this court finds that a stay or dismissal of this matter would not be appropriate under the

Colorado River doctrine.

### Avoidance of Piecemeal Litigation

Toxikon argues that the desirability of avoiding piecemeal litigation weighs

heavily in favor of abstention.  In particular, Toxikon argues that abstention is necessary

to avoid the duplication of effort by counsel and waste of judicial resources that would

occur if both matters proceed at the same time.  It also argues that abstention is necessary

to avoid conflicting findings or outcomes.  (Def. Mem. at 7).  However, Toxikon has not

shown that such concerns are sufficient to support the requested relief.

As an initial matter, it is not clear that the issues to be adjudicated in both courts

are sufficiently similar so that there is a serious risk of conflicting findings or outcomes.

Most of Toxikon's claims in the State Court Action have been brought against Patriot,

which is not a party to this action, and no party has claimed that Patriot is a necessary

party to resolve the breach of contract issues before this court.  Furthermore, the issues in

the two courts are not identical – Spark has not brought breach of contract claims in state

court, and Toxikon has not asserted a rescission of contract claim or a claim under Mass.

Gen. Laws ch. 93A against Spark here. Each case raises separate issues which can be

decided independently.

To the extent the parties believe that it would be most efficient to have all issues

related to the Sales Agreements adjudicated in a single forum,[3] there is no apparent

reason why Patriot cannot be added to the instant collection case.  Although jurisdiction

in this case is based on diversity, and Toxikon and Patriot are both citizens of Massachu-

setts, "[n]o independent jurisdictional basis is required for a defendant to implead a third

party defendant."  Flynn v. United States, 902 F.2d 1524, 1531 (10th Cir. 1990).  See

also Grimes v. Mazda N. Am. Operations, 355 F.3d 566, 572 (6th Cir. 2004) (finding that

third-party claim for contribution did not require an independent jurisdictional basis);

State Nat'l Ins. Co. v. Yates, 391 F.3d 577, 581 (5th Cir. 2004) (holding that district court

had supplemental jurisdiction over defendant's claims against additional party, despite

lack of diversity between those parties); 6 Arthur R. Miller & Mary Kay Kane, Fed.

Practice & Procedure § 1444 (3d ed. 2010) ("the cases almost all hold that defendant's

claim against a third-party defendant is within the ancillary jurisdiction of the federal

---

[3] Toxikon's concerns over duplication of effort may be eased by allowing the parties to use discovery taken in the State Court Action in the federal action.  Moreover, to the extent issues resolved in one court may be res judicata in the other, this would alleviate Toxikon's concerns about the risk of conflicting judgments.  See Rojas-Hernandez v. P.R. Elec. Power Auth., 925 F.2d 492, 497 (1st Cir. 1991) (concluding that parallel proceedings in state and federal court did not create significant potential for prejudice from piecemeal litigation where "[j]udgment in one case may be res judicata in the other, thereby ensuring consistency").

courts.  Thus, there need be no independent jurisdictional basis for such a claim if diver-

sity of citizenship exists between the original parties") (footnotes and citations omitted).

Therefore, Toxikon can bring Patriot into the instant case if it deems it appropriate.

Toxikon has not established that Patriot's absence presents a special complication that

would justify this court's relinquishing jurisdiction in favor of the State Court Action.

Compare Jimenez, 597 F.3d at 29-30 (finding that federal court's inability to resolve

defendant's contractual liability to interested parties due to lack of diversity jurisdiction

over those parties created "a greater practical risk of piecemeal litigation than the baseline

inefficiencies of the average exercise of concurrent federal-state jurisdiction" and

warranted abstention).

    Even more importantly for the present Colorado River analysis, "[t]he 'piecemeal

litigation' to be avoided is something more than just the repetitive adjudication that takes

place in all cases implicating *Colorado River* doctrine."  Jimenez, 597 F.3d at 29.

Accordingly, "[d]uplication and inefficiency are not enough to support a federal court's

decision to bow out of a case over which it has jurisdiction."  Villa Marina Yacht Sales,

Inc., 915 F. 2d at 13.  "Dismissal is not warranted simply because related issues

otherwise would be decided by different courts, or even because two courts otherwise

would be deciding the same issues."  KPS & Assocs., Inc., 318 F.3d at 10 (alteration,

quotations and citation omitted).   "[T]he mere potential for conflict in the results of

adjudications, does not, without more, warrant staying exercise of federal jurisdiction."

Colorado River, 424 U.S. at 816, 96 S. Ct. at 1245.  See also Nazario-Lugo v.

Caribevision Holdings, Inc., 670 F.3d 109, 114 (1st Cir. 2012) (emphasizing federal court's obligation to exercise jurisdiction even though parallel litigation poses "some risk of inconsistent decisions from different courts on the same or similar issues").

The First Circuit has instructed that "[w]eight may be afforded to the piecemeal litigation factor only where the implications and practical effects of litigating the parallel actions provide an *exceptional basis* for surrendering federal jurisdiction, such as a clear competing policy or some special complication." Nazario-Lugo, 670 F.3d at 116 (emphasis in original). Parallel litigation regarding an ordinary contract dispute having primary importance only to the immediate parties does not establish such an exceptional basis. See id. at 117; KPS & Assocs., Inc., 318 F.3d at 11. Accordingly, Toxikon has not demonstrated that concerns over piecemeal litigation support abstention in this case.

### Order of Filing

The fourth factor to be considered concerns the order in which the two courts obtained jurisdiction. However, this factor "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." KPS & Assocs., Inc., 318 F.3d at 11 (quotations and citations omitted). Although Spark filed its breach of contract case against Toxikon five months before Toxikon initiated the State Court Action, it appears that greater progress has been made in the State Court Action. Much of the federal collection case has focused on issues of personal jurisdiction and venue, as well as the instant motion to stay. In contrast, according to Toxikon, discovery in the State Court Action is scheduled to end

15

shortly and Spark and Patriot have filed motions for summary judgment.  (Def. Mem. at 1).  Therefore, the order of filing factor weighs in favor of abstention.

Nevertheless, this court finds that the fourth factor is not alone sufficient to overcome the presumption in favor of adjudicating the case in this court.  It is not clear on the record before this court whether a hearing has taken place on the summary judgment motions filed in the State Court Action or whether a ruling on those motions is likely to resolve the litigation.  Nor is it clear whether the State Court Action is likely to be tried anytime soon in the event summary judgment is denied or otherwise fails to resolve the dispute.  Furthermore, although this case has not progressed as far, it is possible that depositions and discovery taken in the State Court Action may be used here, thereby accelerating the pace of discovery in this matter.  Accordingly, this court finds that while consideration of the fourth factor supports abstention, it is not dispositive of Toxikon's motion.

## Controlling Law

Toxikon argues that the fifth factor favors abstention because state law will control the outcome of this case.  Although state law does apply to the claims in this diversity action, this factor does not tilt the balance in favor of abstention.  As an initial matter, there is some question as to whether Massachusetts law is even applicable to the issues raised in this case.  Toxikon has represented in its motion papers that the Sales Agreement at issue "makes reference to New York law."  (Def. Mem. at 6 n.2).  To the extent New York law governs the parties' contract dispute, this court is no less capable

than a Massachusetts state court of applying the law of another jurisdiction to the facts of this case.

Moreover, even assuming Massachusetts law is controlling, "[i]t is only in 'rare instances' that the presence of state-law issues creates any momentum toward deferring to pending local litigation under the *Colorado River* doctrine." Nazario-Lugo, 670 F.3d at 118. "Such a rarity may arise where the state-law issues 'present particularly novel, unusual or difficult questions of legal interpretation' that are best left to state court resolution." Id. (quoting Elmendorf Grafica, Inc. v. D.S. Am. (East), Inc., 48 F.3d 46, 52 (1st Cir. 1995)). This is not such a case.

No novel or difficult state law issues appear to be implicated by the claims and defenses raised in the instant matter. Spark's Petition against Toxikon amounts to a simple breach of contract case involving straightforward issues of state law. See id. (concluding that no weight should have been given to source-of-law factor in simple contract case involving settled local law). Moreover, the issues raised by Toxikon's defenses, including alleged misrepresentations and breach of fiduciary duties by Patriot, and Spark's claim that the Appointment of Agent gave Patriot apparent authority to sign the Sales Agreement on Toxikon's behalf, are neither unusual nor complex. Indeed, each of the parties argues that straightforward application of state law principles to the facts developed so far favors its position on the merits. (See Pl. Opp. Mem. at 7-9; Def. Reply Mem. (Docket No. 42) at 2-3). Therefore, this court finds that the fifth factor does not weigh in favor of abstention.

## Respect for Principles Underlying Removal Jurisdiction

Spark argues that the eighth factor, concerning respect for principles underlying removal jurisdiction, weighs against abstention because Toxikon invoked the court's removal jurisdiction when it chose to remove this case from Texas state court, but is now asking the federal court to defer to a state forum.  (Pl. Opp. Mem. at 10).  The First Circuit has explained that the removal statute, which authorizes defendants but not plaintiffs to remove a case from state to federal court, reflects Congress' intent to limit plaintiffs to their initial choice of forum.  Villa Marina Yacht Sales, Inc., 915 F.2d at 14. Thus, this factor weighs in favor of abstention when the same plaintiff attempts to litigate the same issues in both forums.  See id.  No such circumstances are presented here. Therefore, the expressed policy underlying removal does not appear applicable in this case.

Nevertheless, the procedural history of this matter shows that Toxikon, not Spark, made the decision to initiate suit in state court while this case remained pending in federal court.  Thus, although the eighth factor in the Colorado River analysis is not directly implicated by the facts of this case, Toxikon's decision to litigate the dispute in two separate forums further convinces this court that abstention is not warranted.

## Consideration of Factors in Combination

When the relevant factors are considered in their totality, in light of the heavy presumption in favor of exercising jurisdiction, this court declines to abstain.  There

simply has been no exceptional circumstance presented which would justify this court's abdication of jurisdiction.

## IV.   <u>CONCLUSION</u>

For all the reasons detailed above, the "Defendant Toxikon's Motion to Stay Proceedings or Alternatively, to Dismiss" (Docket No. 37) is DENIED.

   / s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge
